## WEINSTEIN v. STUDEBAKER CORP.

(District Court, E. D. Pennsylvania. December 29, 1916.)

No. 3948.

1. SALES ☞413—ACTION FOR BREACH—ISSUES AND PROOF.

Under a contract by defendant, a manufacturer of automobiles, to deliver cars on orders from defendant f. o. b. Detroit, to be paid for on or before such delivery, plaintiff could not recover damages for failure to deliver, without proof that it gave shipping directions, and of its readiness to make payment, or of waiver of such condition.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1166–1169; Dec. Dig. ☞413.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. APPEAL AND ERROR ⬅882(14)—INSTRUCTIONS—ISSUES AND THEORIES OF CASE.

A party cannot complain that a case was submitted to the jury on his own theory of the issues, whether such theory was or was not correct.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3604; Dec. Dig. ⬅882(14).]

At Law. Action by Jacob I. Weinstein, trustee in bankruptcy of the Wallace Automobile Company, Incorporated, against the Studebaker Corporation. Sur rule for new trial. Rule discharged.

Jos. Sternberger and Fox & Rothschild, all of Philadelphia, Pa., for plaintiff.

Sheldon F. Potter and Sheldon Potter, both of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. This case affords an illustration (although it is not quite a characteristic instance) of that class of contracts in which fact and substance are wholly ignored, and fiction and form are made to do duty in their stead. In fact and substance the business proposed by the parties to be done was the manufacture of automobiles by the defendant, to be delivered to the plaintiff's bankrupt at a price, and to be sold by the latter at another price, and to be paid for on delivery. The gross profit to the bankrupt would therefore be the difference between the prices thus fixed and its net profits this difference, less freight and the expenses of selling the automobiles to the ultimate purchasers. To accomplish this an agreement was made in anticipation of the contract of sale. To secure to the manufacturer all the benefits of such a transaction, without any of its attendant risks, certain writings were made and signed. These are not with flippancy, but with earnestness, characterized by counsel for defendant, as a jumble of a contract of sale which was no sale, an agency agreement which created no agency, an order for automobiles and its acceptance, which was neither an order nor an acceptance, a contract of bailment where there was no bailment, and, to crown all, provisions were added that the agreements might be annulled, and the order, or its acceptance, canceled at will, and claims for any breaches of the contract were waived. In fact, he charges the agreements with being so one-sided, inequitable, and lacking in mutuality as to be absolutely void, and so meaningless as to be unenforceable. We may accept his characterization without the concession of the right of his client to make a hard bargain and then refuse to abide by it. Indeed, this seemingly difficult accomplishment of traveling in opposite directions at one and the same time and of attaining the unattainable was nevertheless accomplished through the simple expedient of entering into an agreement setting forth the terms and conditions upon which any orders given by the bankrupt for automobiles and accepted by the defendant were to be deemed to have been accepted. The arrangement between the parties was all embodied in writings, the only features of which now of importance to us are the following (at least, these will serve as illustrations of all which now concern us):

There are two of these writings—the preliminary paper and the order and its acceptance already mentioned. The preliminary paper was not to take effect until and unless automobiles were ordered, and the acceptance of the order automatically incorporated the preliminary agreement as a statement of the terms and conditions of acceptance. The automobiles ordered were to be delivered f. o. b. cars at Detroit, and shipped to Philadelphia, consigned to the bankrupt, but were to be paid for before or at the time they were put on the cars. There was a provision that the defendant might, at its option, ship to Philadelphia with sight drafts accompanying bill of lading; the consignee paying the freight. There was also a provision that nothing done by the defendant should be construed as a waiver of any of the benefits of the contract or estop·it from thereafter insisting upon its strict fulfillment. There was the further stipulation that the defendant should not be answerable for its default, due to strikes or casualties, and should not be responsible for any failure to ship or ship promptly, due to delays in manufacture, and that the defendant might declare the agreement off at any time, and should be under no obligation to deliver any automobiles previously ordered, but as yet undelivered. The bankrupt filed with the defendant an order for 300 automobiles, and the order was accepted subject to the terms of the preliminary agreement. The order set forth the times of delivery and the number and kind of cars to be delivered at each of the times mentioned. Some cars were delivered, but none at the times called for in the original order. The order was in part canceled by the bankrupt, and this resulted in a cancellation of a further part of the order under the terms of its acceptance. The cars which were shipped came to Philadelphia, with sight drafts accompanying the bills of lading, and for some of them the defendant extended indulgence in the time and mode of payment. The bankrupt further asked and was granted the privilege of accepting deliveries of one type of car ordered and not accepting another type, the order for which was canceled. The bankrupt neither paid nor offered to pay for any cars at time of shipment.

The action is by the trustee in bankruptcy, the claim being made for the lost profits on the cars not delivered, less those the order for which was canceled, and less also cars which were to have been shipped before the date when the first cars were shipped. The reason for this latter deduction will later appear. It is clear that the transaction as arranged between the parties was in substance this:

The cars to be sold by the bankrupt to its customers had not been manufactured. The bankrupt did not know how many it could sell, nor did the defendant know how many it would be able to manufacture, nor how rapidly it could turn them out. Neither party was willing to bind itself by a hard and fast contract. Their agreement therefore was nothing more than a tentative estimate of what each expected, or at least hoped to be able to do. The defendant sought to protect itself by the reservation of at least two rights. One was to withhold deliveries unless the cars were paid for before or on delivery. The other was, if the demand for cars was accompanied with the offer of payment, to terminate the contract. If it had the cars to spare, it

was in a position to let them go. If it did not have them, it could end the contract. As long as the bankrupt was content to accept such number of cars as the defendant was able to send, the dealings could drift along.

The bankrupt was not so happily circumstanced, but it was confronted with a very practical situation. It could not expect the defendant to make an absolute agreement to deliver, unless it made an absolute agreement to pay for the cars when delivered, whether purchasers had been found or not. It therefore accepted the only agreement it could get. There was a well-founded expectation that the defendant would be as willing as itself to fill orders for all cars which could be sold. It did not attempt to force the delivery, because it knew this would result in the contract being called off. It was therefore content to plead for the cars it wanted, instead of demanding them.

The discussion of the defense took a wide range and issues of fact were presented to the jury which had no proper place among the real issues. The trial was conducted by both counsel with signal ability and earnestness. If the trial tactics employed were open to question, it was in the bringing into the defense of some extraneous matters and an over-anxiety on the part of plaintiff to meet anticipated defenses. One of these features of defense now made the subject of complaint was the charge that the defendant had been deceived and misled into making the contract by a false show of credit and financial strength on the part of the bankrupt. It is now asserted (and perhaps with truth) that this prejudiced the jury against the plaintiff. Obviously this had no bearing upon the issue of performance, except that so far as deception was admitted to have been practiced by a witness it went to his credibility. The evidence thus made of defensive value was not only in the case without objection, but was introduced, and its value first discussed and presented to the jury for appraisement, by the plaintiff himself. The introduction of this evidence could not, therefore, be permitted to disturb the verdict. To the mind of the trial judge it had no value or bearing upon the real issues, and in his opinion was best disposed of by ignoring it and directing the attention of the jury to those real issues as the only ones.

[1] With respect to the legal merits of the case as presented, and as in strictness it should have been presented, there is this to be said: The contract as written called for delivery to plaintiff f. o. b. cars at Detroit upon payment there made. The plaintiff was to pay the freight and assumed the risks of carriage. It was in consequence its right to select and name the carrier. It became, in further consequence, the first actor, and could not claim for a failure of the defendant to deliver until it gave shipping directions and stood ready to make payment accompanying delivery. Kunkle v. Mitchell, 56 Pa. 100.

Plaintiff did nothing, and in still further consequence had no right to recover anything, unless this feature of the contract was waived or changed. The best, therefore, which could be done for the plaintiff, was to submit this question of waiver. This was done, and therefore

the plaintiff has no cause to complain. Logically, if a waiver was found, the plaintiff was entitled to a verdict, and nothing remained except to assess the damages. These might have been anything from nominal to the full amount claimed. Inasmuch as the defendant fixed the selling price of the automobiles, this price might have been taken, at least prima facie, as the market value, and the damages determined on this basis.

[2] During the trial of the cause this thought was suggested by the trial judge, and presented to the plaintiff. It was met by the statement that the plaintiff's view was that its damages were on what was virtually an agent's commission basis, and it was therefore necessary to prove its ability to make sales. This it sought to do, and the trial judge accepted and presented its theory to the jury. Counsel for defendant also asserted this theory to be the correct one. If this was error (as it may be it was), it is an error of which the plaintiff cannot now complain.

The trial judge was fully justified in submitting the case on this theory, because it would have been an injustice to plaintiff for the trial judge to have jeopardized plaintiff's case by insisting upon giving instructions to the jury more favorable to the plaintiff than those for which it asked. After taking the position which was taken, it was too late to return to the other, and the court was not bound to charge otherwise than was done.

The verdict may be practically accounted for by either of two possible findings. The jury may have found no waiver, and in consequence no breach. It is practically possible they found the waiver, but no damages. In the latter event, there should have been a verdict for the plaintiff for nominal damages. It would have been well if the jury had been specifically so instructed. This was, however, the logic of the charge, which the jury must be taken to have appreciated and applied. This feature of the trial is of practical value only as affecting costs, and the error is of the too remotely possible kind to justify disturbing the verdict.

The financial ability of the bankrupt to handle business and its ability to make sales had, it must be kept in mind, a bearing upon the question of the breach of the contract, because bearing upon the question whether the nonreceipt of cars was due to the default of the defendant, or due to the fact that the bankrupt did not really want the cars delivered, either because it could not finance its business, or because it had no sale for the cars.

The real complaint of the plaintiff is voiced in the refusal of the trial judge to affirm those of its points which set forth its right as matter of law to have a verdict directed to be rendered in its favor, because it had introduced evidence, and the defendant had not, or at least to have the jury instructed that the preponderance of the proofs was in its favor. To have so charged would have been a usurpation of the functions of the jury, and to relieve the plaintiff of the burden placed upon him to prove the facts affirmatively to be established.

The rule for a new trial is discharged, and defendant may enter judgment on the verdict in its favor.